DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Sherita S., appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to two of her minor children, J.B. and J.B., and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 {¶ 2} Appellant is the mother of J.B., born November 6, 2002, and J.B., born January 26, 2004. Appellant also has a third child, S.F., whose custody is not at issue in this action. The biological father of J.B. and J.B., Jason B., ("Father") is not a party to the present appeal.
 {¶ 3} According to the allegations in the complaint, this action represents the second time this family has been involved with CSB. In the prior case, all three children were adjudicated dependent and were in the custody of the agency from May 2004 until February 2005.
 {¶ 4} The present matter began on June 26, 2005, when J.B. and J.B. were reported to be left alone at 1:15 a.m. Police were called, and they found the older child wandering around alone outside and the younger child left in his crib in a locked bedroom. According to the complaint subsequently filed by CSB, the home was in deplorable condition, smelling of urine and rotting food, with clothes, debris, and dirt piled throughout. The inside temperature was over 90 degrees. As the police were removing the children from the home, Appellant arrived home from a bar with a friend, but fled at the sight of the police. Appellant was charged with two counts of felony child endangering.
 {¶ 5} The complaint filed by CSB alleged that the children had been abused, neglected, dependent, and endangered, and CSB sought emergency temporary custody. The trial court's order indicated that counsel would be appointed for Appellant and Father, subject to them completing applications for appointed counsel and their eligibility. The trial court also appointed attorney Mark Sweeney to serve as both attorney and guardian ad litem for the children because of the allegations of abuse.
 {¶ 6} The matter proceeded to adjudication and disposition. Neither parent appeared for those hearings. The trial court found the children to be abused and neglected, and placed them in the temporary custody of CSB. Appellant's portion of the case plan, as adopted by the trial court, required her to address concerns regarding substance abuse, parenting skills, mental health, and housing.
 {¶ 7} Appellant participated in visitation during October, but did not attend any further visits until after the motion for permanent custody was filed on May 2, 2006. Appellant attended five of eight visits scheduled between June 30, 2006 and August 18, 2006. The caseworker had repeatedly invited both parents to attend visits in the interim, but they declined. According to the caseworker, Father did not want to visit unless and until he could bring the children home and Mother wanted to resolve her criminal matters first — or simply let Father have custody.
 {¶ 8} The permanent custody hearing was conducted on August 30, 2006. Each parent was personally served with CSB's motion, but neither attended the permanent custody hearing. In addition, neither parent applied for legal counsel and neither parent was represented by counsel at that hearing.
 {¶ 9} Following the hearing, the trial court found that the children were abandoned pursuant to R.C. 2151.414(B)(1)(b) and R.C.2151.011(C)[1] because each parent failed to visit or maintain contact with the children for a period of more than 90 days. The court also found, pursuant to R.C. 2151.414(D), that it was in the best interests of the children to be placed in the permanent custody of CSB. We note, at this point, that our review of the record indicates that the evidence presented at the hearing abundantly supports the findings of the trial court as to abandonment and the best interests of the children.
 {¶ 10} The trial court found that Appellant's contact with the children had been minimal, and that Father had no contact with the children at all. The children were too young, the court found, to express an opinion as to custody. The guardian ad litem, as well as the caseworker, expressed the view that permanent custody was in the best interests of the children. The court found that the children had been in the care of CSB for 19 months by the time the motion for permanent custody was filed, and had otherwise been in the custody of their parents. The court found that no relatives had stepped forward to request custody, and, also, that both parents were presently incarcerated and unable to care for the children. Permanent custody, the court indicated, was the only means to provide the children with the secure and permanent placement they needed. In addition, the court found that Appellant had twice been convicted of child endangering in regard to these children. The trial court concluded by finding that neither parent had made any case plan progress whatsoever despite the reasonable efforts of CSB to return the children to the care of their parents.
 {¶ 11} The trial court, therefore, terminated the parental rights of Appellant and Father, and placed the children in the permanent custody of CSB. Appellant timely appeals from that order and assigns one error for review.
 Assignment of Error "The verdict granting permanent custody of Appellant's children to Childrens (sic) Services was against the manifest weight of the evidence; the evidence is not legally sufficient to support the verdict."
 {¶ 12} Although Appellant's assignment of error is framed in terms of the weight and sufficiency of the evidence, her supporting argument is not directed towards a broad consideration of the evidence adduced before the trial court, nor does it challenge the findings of the trial court on abandonment or the best interests of the children. Rather, as we understand Appellant's argument, it is an assertion that the trial court should have conducted a more thorough investigation of a potential conflict in the dual role of attorney Sweeney who was appointed to represent the children as both attorney and guardian ad litem, and that the trial court should have appointed separate counsel for the older child.[2]
 {¶ 13} As a preliminary matter, we note that neither Appellant nor Father attended the permanent custody hearing, and neither of them was represented by counsel at any point in the proceedings below. However, Appellant and Father were each personally served with notice of the hearing and were informed of their right to counsel. Moreover, both Appellant and Father communicated with the CSB caseworker on approximately a monthly basis. Appellant participated in only one hearing before the trial court. That hearing took place in June 2006, after the motion for permanent custody was already filed. Appellant attended visitations in October 2005, and again from June 30, 2006 until August 18, 2006. Otherwise, there is no evidence that either parent made any effort to comply with any portion of the case plan.
 {¶ 14} The record indicates that both Appellant and Father were informed of their right to appointed counsel, were encouraged to obtain counsel, and were instructed regarding the process by which to apply for counsel. The record further reveals that neither Appellant nor Father complied with the application procedures which are the necessary prerequisite to accessing the right to appointed counsel. See R.C.2151.314(D). Where an individual has been notified of the procedures to be followed in order to obtain appointed counsel, but fails to make proper and timely application for counsel, there is no denial of the effective assistance of counsel. See In re Careuthers (May 2, 2001), 9th Dist. No. 20272. See, also, In re E.T., 9th Dist. No., 23017,2006-Ohio-2413, at ¶ 85.
 {¶ 15} Accordingly, we proceed to address the argument made on Appellant's behalf by her counsel on appeal.
 {¶ 16} At the outset of the permanent custody hearing, attorney/guardian ad litem Mark Sweeney appropriately notified the trial judge that he had learned of a "potential conflict of interest" in his dual role as attorney and guardian ad litem. He traced this potential conflict to the fact that he recommended that permanent custody of the children should be awarded to CSB, while at the same time, he understood that the older child recently indicated to the caseworker that he had a desire to be reunified with his mother.
 {¶ 17} The trial judge inquired of the prosecutor as to whether the child indicated to the caseworker that he wanted to be reunified with his mother. The prosecutor stated that the caseworker had not, in fact, reported that the child so indicated, but that the caseworker noticed, instead, that the child was very clingy with the mother, wanted her to carry him, and cried when she did not visit.
 {¶ 18} After verifying the age of the child and noting that the child had not made a direct statement indicating that he wished to return home with Appellant, the trial judge stated that she would not appoint a separate attorney for him. The trial judge stated that, absent a report that the child explicitly said he wanted to go home with his mother, she would not read such a conclusion into actions merely reflecting that he enjoys being around his mother. The matter proceeded to hearing on the motion for permanent custody. At that hearing, no evidence was introduced suggesting that the child had directly expressed a desire to return home with his mother.
 {¶ 19} During the permanent custody hearing, Caseworker Michael Flinn testified regarding his observations of two visits that occurred during the period between June 30, 2006 and August 18, 2006. He testified that it appeared the children missed their mother and that she did her best to try to comfort them. Significantly, he did not state that either of the children expressed a desire to return to live with their mother. In fact, Flinn indicated that the children had a nurturing relationship with their current caregiver, saw her as a surrogate maternal figure, and affectionately called her "mama." The early intervention specialist testified similarly that both boys were very attached to their caregiver.
 {¶ 20} In considering this issue, we recognize that the Ohio Supreme Court has held that "a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certaincircumstances." (Emphasis added.) In re Williams, 101 Ohio St.3d 398,805 N.E.2d 1110, 2004-Ohio-1500, at syllabus. When the guardian ad litem is an attorney, that person may serve as counsel for the child, provided no conflict between the roles exists. Juv.R. 4(C)(1). A conflict arises when a guardian ad litem, who is also appointed to serve as the juvenile's attorney, considers the juvenile's best interests and recommends a disposition in a permanent custody proceeding that conflicts with the juvenile's wishes. See, generally, In reWilliams, supra.
 {¶ 21} While the Williams court did not explain exactly what circumstances might trigger the juvenile court's duty to appoint counsel, the court indicated that such determinations should be made on a case-by-case basis. Williams, 2004-Ohio-1500, at ¶ 17. The facts ofWilliams may, therefore, be instructive. See In re AT., 9th Dist. No. 23065, 2006-Ohio-3919, at ¶ 57. In Williams, the child was six years of age at the time of the permanent custody hearing and had repeatedly expressed a desire to remain with his mother. Williams, 2004-Ohio-1500, at ¶ 2, 4, and 5. The maturity of the child is an additional and proper consideration. Id. at ¶ 17.
 {¶ 22} In the present case, the record indicates that the child was 42-months-old at the time of the permanent custody hearing, and that he had only sporadic contact with Appellant over the course of the last year. In addition, he had some developmental delays, related to social and cognitive skills. Although both children were said to enjoy being with their mother, there is no evidence that either of them ever affirmatively expressed a desire to return to live with her, much less did they do so "repeatedly." Williams, 2004-Ohio-1500, at ¶ 5.
 {¶ 23} This Court has previously recognized that the desire by a child to see his or her parent does not equate to a desire to live in that parent's household. In re AT., 2006-Ohio-3919, at ¶ 61, citing In reG.C. 8th Dist. No. 83994, 2004-Ohio-5607, at ¶ 9. We have similarly recognized that "the presence of parent/child bonding is not the same thing as making a knowing choice to remain with one parent." In reAT., 2006-Ohio-3919, at ¶ 61, quoting In re M.W., 8th Dist. No. 83390,2005-Ohio-1302, at ¶ 12. The mere fact that a child enjoys seeing his or her parent at visitation is not, therefore, in conflict with a recommendation for permanent custody by a guardian ad litem. See In reA.T., 2006-Ohio-3919, at ¶ 61.
 {¶ 24} In the present case, the trial court did not abuse its discretion when it concluded that the fact that this three and one-half year old child enjoyed seeing his mother at visitation was not sufficient to merit further investigation. Certainly, due to the child's relative immaturity and upon the facts of this case, any error in failing to further probe the child's wishes was harmless. See In reShrider, 2006-Ohio-2792, at ¶ 25.
 {¶ 25} In addition, our review of the record leads us to conclude that, in the circumstances of this case, where the child was very young, where there was no evidence of any affirmative statement by the child that he wished to return to live with his mother, and where the evidence supporting the trial court's findings on parental abandonment and the children's best interests was overwhelming, the separate appointment of counsel was not required under Williams. Other Ohio courts have reached a similar conclusion with respect to children of this young age. See, e.g., In re K. K. #., 8th Dist. No. 83410, 2004-Ohio-4629, at ¶ 9 (non-developmentally delayed four-year-old lacks the cognitive maturity to require independent counsel); In re Shrider, 3rd Dist. No. 16-05-20,2006-Ohio-2792, at ¶ 24 (typical four-year-old and immature six-year-old with social disorders and low IQ both lacked the necessary maturity to give credible testimony about their wishes with regard to custody);In re M.W., 2005-Ohio-1302, ¶ 15 (if a four-year-old has questionable maturity to request independent counsel, there can be no doubt that a 29-month-old has an even greater lack of necessary maturity). Accordingly, Appellant's sole assignment of error is overruled.
 {¶ 26} Appellant's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
CARR, J., BAIRD, J., CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] R.C. 2151.011(C) provides: "For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."
[2] Counsel for Appellee has construed Appellant's argument as one that challenges the trial court's finding that permanent custody is in the best interests of the children. We do not understand Appellant's argument to be so. Rather, we believe Appellant has attempted to raise an issue in regard to a potential conflict in the dual role of the attorney/guardian ad litem and we have, therefore, addressed that issue in our decision."
Outside of an introductory recitation of broad legal principles, Appellant's entire appellate argument is set forth below:
 "Ohio Rule of Juvenile Procedure 4, requires the appointment of a Guardian Ad Litem to any child is (sic) alleged to be abused or neglected. O.R.J.P[.] 4. The duties of the Guardian Ad Litem are specified in the Local Rules of Court. This requires the GAL to visit with the children at least one per month. (S.C.C.P. Juvenile Division L.R. 9.02.)
 "In the instant case the GAL indicated that he had not seen the children since April, the hearing was held in August this is approximately four months time without a visit. (Tr. Vol. I, p. 6) The GAL properly informed the Court of a potential conflict between his roles. (Tr. Vol. I, p. 5) However due to his lack of contact with his client and ward (sic) could not indicate whether such a conflict actually existed. Due in part to the age of the child (presumably) as well as the non testimonial information provided by the State, with no independent investigation, and no in-camera interview, the Court ruled that no conflict existed. (Tr. Vol. I, p. 8)""