DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Chardae Wharton, appeals from the decision of the Summit County Court of Common Pleas, Juvenile Division. This Court affirms.
 I. {¶ 2} Appellant, Chardae Wharton, was thirteen years old when she gave birth to a son, T.W. Demetrius Miller is the father of T.W. Because Chardae was a minor, she and T.W. were placed in the legal custody of her grandmother, Gloria Hudson. On April 10, 2006, the Children Services Board ("CSB") filed a complaint pursuant to R.C. 2151.04(B) and (C) alleging that T.W. was a dependent child because Chardae had left him at the home of the alleged paternal *Page 2 
great grandmother, Gussie Peterson, and had not returned to retrieve him. The complaint further alleged that Chardae had been kicked out of Ms. Hudson's home and was residing with her mother, Lisa Wharton. According to the complaint, Lisa had mental problems and an extensive history with CSB.
 {¶ 3} A magistrate in the juvenile court held an adjudicatory hearing on this complaint on June 29, 2006. On July 3, 2006, the magistrate filed an entry indicating that CSB had failed to prove by clear and convincing evidence that T.W. was a dependent child and dismissed the complaint. On July 10, 2006, CSB filed objections to this order. On November 8, 2006, a juvenile court judge issued an order, sustaining CSB's objections and ordering that T.W. was a dependent child pursuant to R.C. 2151.04(C). The judge remanded the matter to the magistrate to conduct a dispositional hearing.
 {¶ 4} On December 7, 2006, Chardae filed a notice of appeal to this Court. On January 18, 2007, the magistrate held a dispositional hearing and placed T.W. in the legal custody of his father, Mr. Miller. At this hearing, CSB presented testimony and evidence to establish that Mr. Miller was indeed T.W.'s father. Chardae filed objections to the magistrate's decision and on February 26, 2007, the trial court determined that the magistrate did not have jurisdiction to hold the dispositional hearing because Chardae had filed an appeal in this case.
 {¶ 5} CSB filed a motion to dismiss Chardae's appeal for lack of a final, appealable order. On March 6, 2007, this Court dismissed the appeal finding that *Page 3 
an adjudication without disposition is not a final, appealable order. On March 19, 2007, CSB filed a motion for legal custody of T.W. to be placed with his father. The trial court held a hearing on this matter on April 2, 2007. The magistrate granted CSB's motion and awarded legal custody of T.W. to Mr. Miller. On April 16, 2007, Chardae filed objections to the magistrate's decision. On June 13, 2007, the trial court overruled Chardae's objections. Chardae appealed this decision to this Court, raising two assignments of error for our review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN REVERSING THE MAGISTRATE'S DECISION DISMISSING THE DEPENDENCY COMPLAINT BECAUSE THE FINDING OF DEPENDENCY WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND/OR BY THE WEIGHT OF THE EVIDENCE."
 {¶ 6} In her first assignment of error, Chardae argues that the trial court erred in reversing the magistrate's decision dismissing the dependency complaint because the finding of dependency was not supported by clear and convincing evidence and/or by the weight of the evidence. We disagree.
 {¶ 7} The Supreme Court of Ohio has recently reaffirmed that the manifest weight of the evidence standard to be applied in civil cases is that standard which was explained in CE. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus. See State v. Wilson,113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 24. Pursuant to this standard, a reviewing court will presume that the findings of the *Page 4 
trier of fact are correct since the trial judge had an opportunity "`to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" Id., quoting Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77, 80. "`A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.'" Wilson at ¶ 24, quoting SeasonsCoal, 10 Ohio St.3d at 81. "Thus, a judgment supported by `some competent, credible evidence going to all the essential elements of the case' must be affirmed." Wilson at ¶ 26, quoting CE. Morris, 54 Ohio St.3d at syllabus.
 {¶ 8} Accordingly, before this Court will reverse a judgment as being against the manifest weight of the evidence, it must determine whether the judgment of the trier of fact was supported by some competent, credible evidence going to all the essential elements of the case. If the judgment is so supported, then the judgment of the trial court must be affirmed.
 {¶ 9} A child will be adjudicated dependent pursuant to R.C.2151.04(B), if the trial court determines by clear and convincing evidence that the child "lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian[.]" See, generally, Juv.R. 29(E)(4). In order to adjudicate a child dependent pursuant to R.C. 2151.04(C), the trial court must *Page 5 
determine by clear and convincing evidence that the child's "condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" Id. Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoptionof Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus. While requiring a greater standard of proof than a preponderance of the evidence, clear and convincing evidence requires less than proof beyond a reasonable doubt. In re Parsons (Nov. 12, 1997), 9th Dist. Nos. 97CA006662 and 97CA006663, *3.
 {¶ 10} Clear and convincing evidence is not unequivocal. State v.Eppinger (2001), 91 Ohio St.3d 158, 164, quoting Cross,161 Ohio St. at 477. To the contrary, evidence may be clear and convincing and yet admit a degree of conflict and uncertainty that is properly resolved by the trier of fact:
 "The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. * * * Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false." Cross, 161 Ohio St. at 477-78.
 {¶ 11} The focus of a dependency adjudication is not on the fault of the parents, but on the child's environment, including the condition of the home itself *Page 6 
and the availability of medical care and other necessities. See In reBibb (1980), 70 Ohio App.2d 117, 120. In order to establish dependency, therefore, CSB "was required to present evidence of conditions or environmental elements that were adverse to the normal development of the children." In re A.C., 9th Dist. Nos. 03CA0053, 03CA0054, and 03CA0055, 2004-Ohio-3248, at ¶ 14, citing In re Burrell (1979),58 Ohio St.2d 37, 39.
 {¶ 12} At the June 29, 2006 hearing, CSB presented two witnesses including Ms. Peterson, T.W.'s paternal great grandmother, and Stacy Fletcher, the CSB caseworker who investigated the allegation. Neither Chardae nor Mr. Miller were present at the hearing. Ms. Peterson testified that T.W. had lived with her "[o]ff and on since he was about one." She testified that T.W. currently lived with her. She explained that since T.W. was approximately one, he and his mom and her mother, Lisa, would stay at her house for four to five days at a time. As time progressed, Chardae and her mother began leaving T.W. with Ms. Peterson for long periods of time. The lengths of T.W.'s visits at Ms. Peterson's house increased over time until he would stay for twenty days out of the month. During the time that she left T.W. at Ms. Peterson's house, Chardae would not stop by the house to visit him. Chardae only provided food for T.W. on one occasion. Ms. Peterson testified that she and T.W.'s father, Mr. Miller, provided food, clothing and diapers for T.W. *Page 7 
 {¶ 13} Ms. Peterson testified that Chardae became upset with her when she informed Chardae that she had contacted CSB. Chardae told Ms. Peterson that she did not want CSB involved because she was supposed to be living with her grandmother, not her mother, with whom she was residing. Chardae explained to Ms. Peterson that her grandmother had custody of both her and T.W. and that she was not permitted to reside with her mother. Ms. Peterson testified that she tried to get Chardae to come and live with her but that Chardae refused.
 {¶ 14} On cross-examination, Ms. Peterson testified that T.W. was being cared for in an appropriate manner and that his medical needs were being met.
 {¶ 15} Stacy Fletcher, an intake caseworker with CSB, testified on behalf of CSB. Ms. Fletcher testified that her job entails investigating and assessing child abuse, neglect and dependency. She stated that CSB received a referral regarding T.W. on February 27, 2006. The referral concerned a possible dependent child. After receiving the referral, CSB conducted an investigation. Ms. Fletcher testified that she reviewed CSB's records with regard to Chardae and she discovered that Lisa had substantiated mental health issues. She explained that two of Lisa's children reside with their father and Ms. Hudson had legal custody of Chardae and T.W. After receiving the referral, Ms. Fletcher attempted to contact Ms. Hudson and Lisa. She was unable to locate Ms. Hudson. Ms. Fletcher tried to locate Ms. Hudson at her home, but the house was boarded up. She left several phone messages for her but never received a return call. After *Page 8 
several attempts, she finally contacted Lisa. Lisa told Ms. Fletcher that she wanted nothing to do with the situation and that her mother had custody of her daughter and T.W.
 {¶ 16} Ms. Fletcher's investigation revealed that T.W. was residing with Ms. Peterson. She inspected Ms. Peterson's residence and determined that it was appropriate. She explained that T.W. had enough to eat, a place to sleep and that there were no safety hazards. According to Ms. Fletcher, T.W. was clean, well dressed and happy. She noted that he seemed intelligent.
 {¶ 17} Ms. Fletcher testified that she also spoke with Mr. Miller. Mr. Miller told Ms. Fletcher that his grandmother had been caring for T.W. He stated that he was involved in T.W.'s life and that he spent time with T.W. and provided T.W. with food and clothing. Ms. Fletcher testified that Mr. Miller wanted legal custody of T.W.
 {¶ 18} Based on Ms. Fletcher's investigation, she filed a motion for emergency temporary custody of T.W. CSB placed T.W. with Mr. Miller at that time. She explained that at the time of the hearing, T.W. was residing with Ms. Peterson.
 {¶ 19} The record reflects that Ms. Hudson had custody of T.W. and Chardae. However, neither Ms. Hudson nor Chardae provided consistent shelter, food, clothing or diapers for T.W. They left T.W. with Ms. Peterson — who had no legal right to care for him or act on his behalf — for days at a time without food, *Page 9 
clothing or diapers. Chardae and Ms. Hudson failed to even check on T.W.'s well-being after leaving him with Ms. Peterson. Ms. Peterson testified that she does not even know Ms. Hudson. Furthermore, Ms. Fletcher testified that Ms. Hudson's home was boarded up and that she could not be reached by phone or at any other address. Ms. Fletcher testified that Chardae appeared uninterested in T.W.'s living arrangement and that she hung up on Ms. Fletcher several times.
 {¶ 20} Based on the evidence presented at the hearing, we find, at a minimum, that the trial court's reversal of the magistrate's dismissal of the complaint is supported by some competent, credible evidence and as such, must be affirmed. Wilson at ¶ 26. Although the record reflects that Ms. Peterson is meeting T.W.'s daily needs, she has no legal authority to house and care for T.W. The evidence reflects that T.W. was (1) abandoned by his legal custodian and his mother, (2) that neither his mother nor his legal custodian made any type of arrangement with Ms. Peterson for his care, (3) that neither his mother nor his legal custodian has provided financial or any other type of support for him, (4) CSB could not locate the legal custodian, and (5) the legal custodian's house was boarded up. The evidence supports the trial court's conclusion that T.W. is dependent, pursuant to R.C. 2151.04(C). See In re Ament (2001), 142 Ohio App.3d 302, 307-08 (finding that child was dependent where evidence reflected that mother left child in care of her mother without any arrangement or agreement for child's care, did not have a permanent place for her or her children to live, *Page 10 
attempted suicide, and was sentenced to drug treatment program). Consequently, we find merit in the trial court's determination that T.W.'s living "condition or environment is such as to warrant the state, in the interests of [T.W.], in assuming [his] guardianship[.]" R.C.2151.04(C). Accordingly, we find no merit in Chardae's first assignment of error.
 ASSIGNMENT OF ERROR II "THE COURT ERRED IN AWARDING LEGAL CUSTODY TO FATHER BECAUSE [R.C] 2151.35(B)(1) REQUIRES [A] DISMISSAL WHEN COUNSEL RAISES THE ISSUE PRIOR TO DISPOSITION."
 {¶ 21} In her second assignment of error, Chardae argues that the trial court erred in awarding legal custody to Mr. Miller because R.C.2151.35(B)(1) requires dismissal when counsel raises the issue prior to disposition. More specifically, Chardae asserts that the trial court erred when it failed to dismiss the case because it did not hold a dispositional hearing within 90 days of the filing of the complaint. We disagree.
 {¶ 22} The record reflects that on April 10, 2006, CSB filed a complaint alleging that T.W. was a dependent child. On June 29, 2006, the trial court held an adjudicatory hearing on this complaint and on July 3, 2006, the magistrate dismissed the complaint. On July 10, 2006, CSB filed objections to the magistrate's decision. On November 8, 2006, the trial court issued an order, finding that T.W. was a dependent child pursuant to R.C. 2151.04(C). The trial court remanded the matter to the magistrate to conduct a dispositional hearing. On *Page 11 
December 7, 2006, Chardae filed a notice of appeal to this Court. On January 18, 2007, the magistrate held a dispositional hearing and placed T.W. in the legal custody of Mr. Miller.
 {¶ 23} Pursuant to Juv.R. 34(A),
 "[t]he dispositional hearing shall not be held more than ninety days after the date on which the complaint in the case was filed. If the dispositional hearing is not held within this ninety day period of time, the court, on its own motion or the motion of any party or the guardian ad litem of the child, shall dismiss the complaint without prejudice."
R.C. 2151.35(B)(1) includes the above quoted language from Juv.R. 34(A).
 {¶ 24} Here, Chardae contested the allegations in the complaint and filed a motion to dismiss the complaint. The magistrate granted the motion. Because the magistrate dismissed the complaint, it was impossible for the trial court to have held a dispositional hearing within the 90 day period. The Ohio Supreme Court has held that we must construe the applicable statute and rule in such manner as to avoid an unreasonable or absurd result. United Tel. Credit Union v. Roberts,115 Ohio St.3d 464, 2007-Ohio-5247, at ¶ 10.
 {¶ 25} Chardae provides no legal support for her calculation of the time period as including the days between the time this Court dismissed her appeal and the date on which the trial court held the dispositional hearing. We find no support for this calculation. Accordingly, we find no error in the trial court's failure to hold a dispositional hearing within the ninety day time period. Chardae's second assignment of error is overruled. *Page 12 
 III. {¶ 26} Chardae's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 13 
SLABY, P. J., BAIRD, J., CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
 *Page 1