[Cite as *In re L.W.*, 2013-Ohio-5556.]

STATE OF OHIO        )                IN THE COURT OF APPEALS
                        )ss:           NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: L.W.                          C.A. Nos.    26861
                                                        26871

                                     APPEAL FROM JUDGMENT
                                     ENTERED IN THE
                                     COURT OF COMMON PLEAS
                                     COUNTY OF SUMMIT, OHIO
                                     CASE No.    DN 12-08-0537

DECISION AND JOURNAL ENTRY

Dated: December 18, 2013

---

WHITMORE, Judge.

{¶1}    Appellants, Amy W. ("Mother") and Carl S. ("Father"), appeal from the judgment of the Summit County Court of Common Pleas, Juvenile Division, adjudicating their child, L.W., dependent. This Court affirms.

I

{¶2}    After Mother was arrested for domestic violence, her sister gave Mother's two-year old son, L.W., to a friend with Mother's consent. Summit County Children's Services ("CSB") was notified of Mother's arrest in conjunction with two prior referrals the agency had received regarding L.W.'s home environment. The CSB intake worker who had investigated the prior referrals inspected the caregiver's home and uncovered several safety concerns. Additionally, the worker noted that there were multiple, young children in the home who appeared to be unsupervised, as they had been locked upstairs by themselves. CSB removed L.W. from the home pursuant to Juv.R. 6.

**{¶3}** CSB filed a complaint alleging that L.W. was both a neglected and dependent child and sought an emergency order of custody. That same day, the court granted emergency custody to CSB and scheduled a shelter care hearing. Both Mother and Father appeared at the shelter care hearing with counsel and both stipulated to the existence of probable cause for CSB to retain emergency custody. The trial court determined that probable cause for continuing emergency custody existed and set the matter for an adjudicatory hearing. The court also appointed L.W. a guardian ad litem ("GAL").

**{¶4}** All the parties appeared for the scheduled adjudicatory hearing, but the hearing was postponed upon the agreement of the parties. Before the rescheduled adjudicatory hearing could occur, Mother filed a motion to dismiss on two grounds. Mother argued that the case should be dismissed because CSB failed to serve L.W. with a copy of the complaint and the trial court failed to appoint counsel for L.W. A magistrate heard arguments on Mother's motion at the adjudicatory hearing. Father indicated his agreement with Mother's motion, but the magistrate rejected the motion and proceeded with the adjudicatory hearing. At the conclusion of the hearing, the magistrate found L.W. to be a dependent child under R.C. 2151.04(C) and set the matter for a dispositional hearing.[1] After the dispositional hearing, the magistrate entered an order finding that it was in L.W.'s best interest to remain in the temporary custody of CSB until further notice. The trial court adopted the magistrate's rulings.

**{¶5}** Mother and Father filed objections to the magistrate's decision, and CSB filed a brief in response. The trial court overruled their objections without holding a hearing. Consistent with its prior ruling, the court found L.W. a dependent child under R.C. 2151.04(C).

---

[1] The complaint also alleged additional bases for a finding of dependency (R.C. 2151.04(B)) and neglect (R.C. 2151.03(A)(2)), but the magistrate dismissed the additional bases.

{¶6} Mother and Father now appeal from the trial court's judgment. Because both appeals arise from the same matter and have interrelated assignments of error, we have consolidated the cases for purposes of entering judgment. Additionally, for ease of analysis, the assignments of error have been rearranged and consolidated.

II

Father's Assignment of Error Number One

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY FINDING
THAT THE CHILD DID NOT NEED TO BE SERVED IN ORDER TO HAVE
PROPER JURISDICTION OVER THIS CASE.

{¶7} In his first assignment of error, Father argues that the trial court erred by entering a judgment in the absence of personal jurisdiction over L.W., as the record reflects that L.W. was never served with a copy of CSB's complaint.

{¶8} Generally, absent an error of law, "the decision to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion." *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. A challenge to a court's jurisdiction is a question of law that will be reviewed de novo. *In re Z.H.*, 9th Dist. Summit No. 26844, 2013-Ohio-3904, ¶ 12. "A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *State v. Baumeister*, 9th Dist. Summit No. 23805, 2008-Ohio-110, ¶ 4.

{¶9} "Unlike subject matter jurisdiction, the issue of personal jurisdiction is forfeited without timely objection." *In re A.M.*, 9th Dist. Summit No. 26141, 2012-Ohio-1024, ¶ 13. To be timely, an objection to a defect in service must be raised "through the first pleading, motion,

or appearance in the trial court." *In re J.P.*, 9th Dist. Summit No. 23937, 2008-Ohio-2157, ¶ 7. "Moreover, in juvenile proceedings, any defects in the institution of juvenile proceedings must be raised prior to the adjudicatory hearing." *Id.*

{¶10} The record reflects that Father forfeited the service issue he now seeks to raise by failing to assert it in a timely manner. Both Mother and Father appeared with counsel before the magistrate for a shelter care hearing on August 14, 2012. Neither party raised the issue of service on L.W. at that time. On August 23, 2012, the court formally appointed the same attorney who had appeared on Father's behalf at the shelter care hearing as counsel for Father, as Father had shown that he satisfied the eligibility requirements for appointed counsel. On September 12, 2012, both parties appeared before the court with their counsel for the originally scheduled adjudicatory hearing.

{¶11} No transcript of the September 12th hearing exists, but the magistrate issued an order after the hearing. The order provides:

> On August 13, 2012, [CSB] filed a complaint alleging [L.W.] to be a neglected and dependent child. Assistant Prosecutor Misra advised the court that although both parents were served personally at the shelter care hearing, that service has not yet been docketed in the court record. Counsels for the parents are not willing to waive the service defect. Accordingly, [CSB] is requesting the court reschedule this matter. The court finds the request to be well taken.

Thus, the parties raised an issue regarding service at the hearing, but the argument was limited to the service they received. There is no evidence that the parties raised service upon L.W. at the September 12th hearing.

{¶12} On October 16, 2012, Mother filed her motion to dismiss in which she argued that CSB had failed to serve L.W. Father never filed a motion to dismiss. Instead, Father waited until the October 26, 2012 adjudicatory hearing to indicate that he agreed with Mother's motion. One of the bases the magistrate relied upon in rejecting Mother's motion was that she forfeited

the service argument by failing to raise it in a timely manner. Nevertheless, Father did not address forfeiture in filing his objections to the magistrate's decision. Father also has not addressed the issue of forfeiture on appeal.

**{¶13}** Father did not raise the issue of service upon L.W. at either his first or his second appearance before the court. *See In re J.P.*, 2008-Ohio-2157, at ¶ 7. The service issue that the parties raised at their second appearance before the court on September 12, 2012, only related to CSB's service upon them, not upon L.W. The record reflects that Father did not challenge the lack of service upon L.W. prior to the rescheduled adjudicatory hearing. *See id.* While Mother filed a motion to dismiss before the rescheduled adjudicatory hearing, Father did not. Father waited until the rescheduled adjudicatory hearing commenced to indicate that he agreed with Mother's motion.

**{¶14}** Although the trial court disposed of Father's objection to the magistrate's decision based upon standing rather than forfeiture, this Court may affirm a judgment that is "legally correct on other grounds." *Cook Family Invests. v. Billings*, 9th Dist. Lorain Nos. 05CA008689 & 05CA008691, 2006-Ohio-764, ¶ 19. Therefore, assuming that Father had standing to raise the issue of defective service upon L.W., we must conclude that Father forfeited the issue by failing to raise it in a timely manner. *See id. See also In re M.T.B.*, 9th Dist. Summit No. 26866, 2013-Ohio-4998, ¶ 7-8. Father's first assignment of error is overruled.

<u>Father's Assignment of Error Number Two</u>

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT THE CHILD WAS NOT ENTITLED TO BE REPRESENTED BY COUNSEL OR A GAL AT ALL STAGES OF THE PROCEEDINGS.

{¶15} In his second assignment of error, Father argues that the trial court erred by not ensuring that L.W. was represented by counsel or a GAL at every stage of the proceedings. We disagree.

{¶16} As previously noted, this Court generally reviews a trial court's decision to adopt a magistrate's decision for an abuse of discretion, but must do so with reference to the nature of the underlying matter. *Barlow*, 2009-Ohio-3788, at ¶ 5; *Tabatabai*, 2009-Ohio-3139, at ¶ 18. A de novo standard of review applies to a trial court's interpretation and application of a statute. *In re K.E.M.*, 9th Dist. Summit No. 26307, 2012-Ohio-5652, ¶ 11.

{¶17} R.C. 2151.352 provides, in relevant part, that:

> [a] child * * * is entitled to representation by legal counsel at all stages of the proceedings under this chapter or [R.C.] Chapter 2152. * * * If, as an indigent person, a party is unable to employ counsel, the party is entitled to have counsel provided for the person pursuant to [R.C.] Chapter 120. * * * Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more such parties conflict, separate counsel shall be provided for each of them.

Further, Juv.R. 4(A) provides:

> Every party shall have the right to be represented by counsel and every child * * * the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. When the complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interests of the child. This rule shall not be construed to provide for a right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute.

A child "who is the subject of a juvenile court proceeding" is a "party" for purposes of Juv.R. 4. Juv.R. 2(Y).

{¶18} In *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, the Ohio Supreme Court considered R.C. 2151.352's application in a permanent custody case that arose from findings of dependency and neglect. The Court recognized that the plain language of R.C. 2151.352

provides a child with a right to counsel, but refused to set forth a bright-line rule. *In re Williams* at ¶ 25-29. Instead, the Court held that "a child who is the subject of a juvenile court proceeding to terminate parental rights * * * is entitled to independent counsel in certain circumstances." *Id.* at ¶ 29. The Court "did not explain exactly what circumstances might trigger the juvenile court's duty to appoint counsel, [but] * * * indicated that such determinations should be made on a case-by-case basis." *In re J.B.*, 9th Dist. Summit No. 23436, 2007-Ohio-620, ¶ 21.

**{¶19}** Father asks this Court to hold that there is a per se right to counsel for children in dependency and neglect cases. Even in permanent custody cases, however, a child's right to appointed counsel is not absolute. *In re Williams* at ¶ 29. That is true even though "permanent custody is an extreme measure." *In re William S.*, 75 Ohio St.3d 95, 100 (1996). The case at hand is not a permanent custody case or a case in which CSB sought a finding of abuse in its complaint. *See* Juv.R. 4(A) ("When the complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interests of the child."); *In re M.C.*, 6th Dist. Lucas No. L-09-1271, 2010-Ohio-1360, ¶ 37-43 (Juv.R. 4 inapplicable when abuse not actually alleged in the complaint). It is a case where CSB was awarded temporary custody based strictly on a finding of dependency. Given the Supreme Court's decision in *In re Williams*, we fail to see how we can adopt Father's position. Moreover, even assuming that counsel must be appointed for a child on a case-by-case basis in dependency and neglect cases, the record does not support the conclusion that the court erred by not appointing L.W. counsel.

**{¶20}** At the time CSB initiated these proceedings, L.W. was two years old. This Court has recognized, in the context of permanent custody, that counsel need not be appointed for a child when the child is too young to be able to express his individual wishes. *See In re J.B.*, 9th Dist. Summit No. 23436, 2007-Ohio-620, ¶ 25. There is no evidence that L.W. was able to

communicate his wishes. The GAL specifically wrote in her report that "[a]lthough [L.W.] is able to speak, he has been observed showing echolalia when answering questions. Due to this, [L.W.] is not yet able to verbalize his wishes." Because L.W. was very young and unable to communicate his wishes, no conflict between any wishes he might have had and his GAL's recommendation that he remain in temporary custody was shown to exist. *Compare In re B.W.*, 9th Dist. Medina No. 12CA0016-M, 2012-Ohio-3416, ¶ 41 ("When the record demonstrates that the children's wishes are in conflict with the recommendation of the guardian ad litem, the trial court should appoint independent counsel to represent a child who is of sufficient maturity."). Both Mother and Father had counsel throughout the proceedings, and the trial court appointed a GAL for L.W. Father has not shown that the trial court erred by not also appointing counsel for L.W.

{¶21} Father's captioned assignment of error also includes an argument that the trial court erred by failing to appoint a GAL for L.W. at all stages of the proceedings. Yet, Father has not fleshed out this additional argument in his brief. *See* App.R. 16(A)(7). The record reflects that a representative from the GAL's office was present even at the shelter care hearing stage of the proceedings and that the trial court formally appointed a GAL for L.W. before the adjudicatory hearing took place. As this Court has repeatedly held, "[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). Father's second assignment of error is overruled.

## Mother's Assignment of Error

THE FINDING OF DEPENDENCY IS AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE[.]

Father's Assignment of Error Number Three

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY FINDING
THAT THE CHILD WAS DEPENDENT AGAINST THE MANIFEST
WEIGHT OF THE EVIDENCE.

{¶22}  In Mother's sole assignment of error and Father's third assignment of error, they both argue that the lower court's adjudication of L.W. as a dependent child is against the manifest weight of the evidence.  We disagree.

{¶23}  As previously noted, this Court generally reviews a trial court's decision to adopt a magistrate's decision for an abuse of discretion, but must do so with reference to the nature of the underlying matter.  *Barlow*, 2009-Ohio-3788, at ¶ 5; *Tabatabai*, 2009-Ohio-3139, at ¶ 18.  In determining whether a dependency adjudication is against the manifest weight of the evidence, this Court applies the same standard of review that it applies in criminal cases.  *In re J.C.*, 9th Dist. Summit Nos. 26229 & 26233, 2012-Ohio-3144, ¶ 19.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  A weight of evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other.  *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).  Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.  *Id.*  Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against

the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

**{¶24}** R.C. 2151.04(C) defines a "dependent child" as a child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." "This adjudication should concentrate on whether [a child] [is] receiving proper care and support and look to environmental elements that are adverse to the normal development of [the child]." *In re M.O.*, 9th Dist. Summit No. 25312, 2010-Ohio-5107, ¶ 7. Appropriate factors to consider include "the condition of the home itself and the availability of medical care and other necessities." *In re T.W.*, 9th Dist. Summit No. 23801, 2008-Ohio-109, ¶ 11. "The determination that a child is dependent requires no showing of fault on the parent's part, but rather focuses solely upon 'the child's situation to determine whether the child is without proper (or adequate) care or support.'" *In re James*, 9th Dist. Summit No. 20529, 2001 WL 1634654, *2 (Dec. 19, 2001), quoting *In re Riddle*, 79 Ohio St.3d 259, 262 (1997).

**{¶25}** Jennifer Horomanski, the CSB intake worker assigned to L.W.'s case, testified that she was twice referred to Mother's residence before the referral that led to CSB filing the complaint here. On May 15, 2012, and July 12, 2012, Horomanski visited Mother's home because CSB had received information about possible drug activity and abuse/neglect in the home. Horomanski eventually determined that both referrals were unsubstantiated, but was notified on August 7, 2012, that Mother had been arrested for domestic violence. Horomanski visited Mother at the jail, and Mother told her that a fight had broken out between her and her two male roommates. The fight escalated, and one of the males was knocked unconscious when he was struck with a board. L.W. was at home at the time of the incident, but Mother indicated that he was asleep. When the unconscious man awoke, however, he "assumed [Mother] was the

one that had hit him with the board" and called the police. Mother woke L.W. and left the home with him on foot because she did not want to be arrested. Mother told Horomanski that she simply walked around the block with L.W. There was no evidence regarding how long Mother stayed away from the home or if she returned at some point before she was arrested. The only other evidence regarding the domestic violence incident was that it occurred sometime between 11:00 p.m. and midnight.

{¶26} Mother informed Horomanski that L.W. was at church camp when she was arrested, so she asked her sister to pick up L.W. from Mother's home when the bus dropped him off and take him. Mother's sister then apparently contacted a friend and asked the friend to take L.W. Mother did not know the last name of the person who had taken L.W., but stated that her first name was Jennifer and she lived in a blue house on Wilbeth Avenue. Mother indicated that she wanted Jennifer to care for L.W. because there was no one else who could do so. After speaking with Mother, Horomanski was able to identify Jennifer's house and went there to check on L.W.'s living arrangements.

{¶27} While inside Jennifer's house, Horomanski observed that there were six children under the age of twelve, including L.W., being kept upstairs without adult supervision. Horomanski testified that there was a lock on the door leading to the upstairs so that the children had to knock to be allowed downstairs. Once upstairs, Horomanski saw that the children's bedrooms "were scattered and piled high with clothing and dirty laundry." It appeared to Horomanski that the clothes had been there for a long period of time and that some of the clothes were "matted down as if somebody had been * * * [lying] on top of them." Even though there were six children in the home, Horomanski only observed two bedrooms for the children and three beds. She also testified that the home was "in a state of disrepair." She specified that there

were holes in the wall, the children could reach the holes, and she had "concerns about adequate supervision and the children being injured on these areas of the walls." Horomanski averred that "there were numerous areas that would be potential safety hazards."

{¶28} Horomanski stated that she was not permitted to conduct a full investigation of the home where L.W. was staying because the two adults there (Jennifer and her boyfriend) were uncooperative. She specified that they would not allow her to inspect the kitchen cupboards or refrigerator for food and that Jennifer did not want her to talk to the other children in the home. Horomanski also testified that the two adults were evasive. She stated that "[t]here were questions that they were not willing to answer" and their behavior "impeded [her] ability to assess some of the safety concerns" in the home. Horomanski concluded that she felt it was appropriate to remove L.W. from the home due to the safety concerns she had with the condition of the home as well as the suitability of the caregivers, the number of children in the home, and the ability of the caregivers to care for that number of children.

{¶29} After Horomanski visited the home where L.W. had been staying, she made a referral to CSB for the other five children in the home. Mother called Kristin Estep, the intake worker who handled the assessment for the other children in Jennifer's home, to testify at the adjudicatory hearing. Estep testified that she made three visits to Jennifer's home after the referral and ultimately concluded that Jennifer's children did not have to be removed from the home. Estep also testified, however, that she would not have approved Jennifer as an appropriate caregiver for L.W. Estep testified that both the condition of the home, as well as her personal knowledge of Jennifer's prior history with CSB, would have led her to conclude that Jennifer was not an appropriate caregiver for L.W. Although Estep did not remove Jennifer's children from the same home, she explained that the criteria CSB uses to determine when to remove a

child from a parent's care is different from the criteria it uses to determine whether a caregiver is appropriate for a child when, due to the then current circumstances, the child is not residing with his or her parents.

{¶30} Having reviewed the record, we cannot conclude that the adjudication of dependency under R.C. 2151.04(C) is against the manifest weight of the evidence. CSB presented evidence that the home in which L.W. was staying after Mother's arrest for domestic violence posed safety concerns to him and that the agency could not confirm whether L.W. would receive proper care and support in the home. *See In re M.O.*, 2010-Ohio-5107, at ¶ 7. Although other children were not removed from the same home, the same intake worker who made the decision to allow those children to stay in the home testified that she would have removed L.W. from the home, had she been assigned to his case. Given the evidence in the record, we cannot conclude that this is the exceptional case where the evidence weighs heavily against the finding of dependency. Consequently, Mother's sole assignment of error and Father's third assignment of error are overruled.

## III

{¶31} Mother's sole assignment of error is overruled. Similarly, Father's three assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
BETH WHITMORE
FOR THE COURT

MOORE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

ANGELA KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.