[Cite as *In re N.P.*, 2015-Ohio-4542.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: N.P. AND E.M., DEPENDENT CHILDREN. | : | **O P I N I O N** |
| | : | |
| | | **CASE NOS. 2015-L-061** |
| | : | **2015-L-062** |

Civil Appeals from the Lake County Court of Common Pleas, Juvenile Division.
Case Nos. 2013 DP 00145 and 2013 NG 02047.

Judgment: Reversed and remanded.

*Christopher J. Boeman*, P.O Box 583, Willoughby, OH 44096 (For Appellant Veronica Pease).

*Charles E. Coulson*, Lake County Prosecutor, and *Karen A. Sheppert*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Appellee Lake County Department of Job and Family Services).

*Darya Jeffreys Klammer*, The Klammer Law Office, Ltd., 7482 Center Street, Unit 6, Mentor, OH 44060 (Guardian ad litem).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Veronica Pease, appeals from the April 17, 2015 judgments of the Lake County Court of Common Pleas, Juvenile Division, regarding the finding of dependency of two of her children. The court granted the motions for permanent custody of the minor children filed by appellee, Lake County Department of Job and Family Services ("LCDJFS"). As a result, appellant was completely and permanently

divested of all parental rights regarding N.P., born February 18, 2007, and E.M., born October 29, 2008. For the following reasons, we reverse and remand the judgment of the juvenile court.

{¶2} Regarding N.P., LCDJFS filed a complaint including three counts of dependency on January 24, 2013. The complaint alleged that appellant made statements about killing the children, killing herself, and attempting to leave the state of Ohio with N.P. while an open case with E.M. was still pending. The juvenile court appointed Attorney Darya Jeffreys Klammer as N.P.'s guardian ad litem. The court did not make a dual appointment of Attorney Klammer as guardian and legal counsel for N.P. nor did it appoint separate counsel for N.P. An adjudicatory hearing was held two months later, and N.P. was found dependent on all three counts, pursuant to R.C. 2151.04. The juvenile court granted temporary custody of N.P. to LCDJFS.

{¶3} Regarding E.M., LCDJFS filed a complaint including one count of neglect and three counts of dependency on November 26, 2013. The complaint alleged that appellant had a history of mental health concerns, difficulty controlling her anger, and continued substance abuse issues. The juvenile court did not appoint E.M. a guardian ad litem at this time. The juvenile court granted emergency temporary custody of E.M. to LCDJFS. An adjudicatory hearing was held in February 2014, and E.M. was found dependent on one count, pursuant to R.C. 2151.04. The neglect count and two dependency counts were dismissed. LCDJFS' temporary custody of E.M. continued.

{¶4} On June 4, 2014, the parties agreed to join Salena Hickman as a party to N.P.'s case. Ms. Hickman is the minor children's maternal great aunt. LCDJFS

2

subsequently filed motions to terminate temporary custody and moved for legal custody of the children. Appellant filed a motion to increase her visitation.

{¶5} On September 18, 2014, the juvenile court adopted a case plan amendment, which indicated that N.P.'s placement had been changed to a certified foster home. LCDJFS filed a motion to extend protective supervision. On October 20, 2014, the juvenile court adopted a case plan amendment noting that E.M.'s placement was changed to a less-restrictive certified relative's home. Thereafter, LCDJFS filed motions to remove Ms. Hickman and Rebecca Marsh, E.M.'s paternal grandmother, as parties. LCDJFS moved the court to join Timothy and Stacy Zimmerman as parties, the minor children's maternal aunt and uncle. On November 7, 2014, LCDJFS filed an amended motion to extend temporary custody of E.M.

{¶6} The magistrate issued decisions in both cases on November 10, 2014. In E.M.'s case, the magistrate recommended the following: dismiss appellant's motion to increase visitation and rule as moot LCDJFS' motion to extend protective supervision. The magistrate further recommended setting for trial LCDJFS' motions to extend temporary custody, to join the Zimmermans as parties, and to remove Ms. Marsh as a party. In N.P.'s case, the magistrate recommended the following: withdraw LCDFJS' motions to terminate temporary custody and for legal custody; withdraw appellant's motions to return custody and to increase visitation; deny LCDJFS' motion to remove Ms. Hickman as a party; and grant LCDJFS' motion to extend temporary custody. The juvenile court adopted the magistrate's recommendations in both cases.

{¶7} Later that month, appellant filed motions in both cases to return custody to her and to increase visitation. She later withdrew her motions for custody, and the

3

motions for increased visitation proceeded before the magistrate on December 22, 2014. The magistrate recommended an increase in visitation of four hours per week and that the Zimmermans be made parties to E.M.'s case. The juvenile court adopted the magistrate's recommendation on January 2, 2015.

{¶8} Four days later, on January 6, 2015, LCDJFS filed motions for permanent custody of the minor children. The motions alleged that the children are bonded to each other as well as to a younger sister. On February 25, 2015, Attorney Klammer was retroactively appointed guardian ad litem of E.M., effective as of November 26, 2013. The juvenile court did not make a dual appointment of Attorney Klammer as guardian and counsel nor did it appoint separate counsel for E.M.

{¶9} On February 26, 2015, appellant filed another motion to return custody to her. This motion and the motion for permanent custody were set for a hearing. Prior to the hearing, the guardian ad litem filed her reports on April 8, 2015, recommending that the court grant permanent custody of the children to LCDJFS.

{¶10} The hearing was held before the juvenile court judge on April 15, 2015. The assistant prosecutors represented LCDJFS; Attorneys Talikka and Koerner represented appellant; the Zimmermans appeared pro se. Attorney Klammer appeared as guardian ad litem for the children, but she did not testify. The parties stipulated to the admission of the guardian ad litem's reports. In addition to appellant, the following witnesses testified before the court: Jennifer Dzugan, E.M.'s counselor at Crossroads Mental Health Service; Shannon Easter Kelley, N.P.'s counselor at Signature Health; Laurie Truhan, appellant's counselor at Signature Health; Heather Riser, a former social worker and supervisor at LCDJFS; Jessica Ray, a social worker at LCDJFS; Stacy

4

Zimmerman, the children's maternal aunt and with whom E.M. was residing; Ann Brown, the children's maternal grandmother and with whom appellant was residing; and Selena Hickman, the children's maternal great aunt.

{¶11} N.P. was interviewed by the court in camera in the presence of her guardian ad litem. Ms. Riser testified that N.P. has "gone back and forth for a very long time" about her wishes regarding living with appellant; that N.P. likes visiting with appellant, but that she wanted to remain with Ms. Hickman; and that N.P. did not feel safe at Mrs. Brown's, where appellant was living. Ms. Ray testified that N.P. feels safe with her paternal grandmother in Georgia and with her foster mother, but that neither are options for permanent placement. The guardian ad litem's report states that N.P. "has reported concerns about returning to the home of [Mrs. Brown], where [appellant] resides"; that N.P. clearly loves appellant; and that N.P. knows she is safe with her foster family and is not safe with appellant given the circumstances. Ms. Hickman testified, on the other hand, that N.P. repeatedly expressed she wants to go home to live with appellant. The court found that N.P. "loves her mother, however, she knows it is unsafe to return to her maternal grandmother's home (where her mother lives) and she does not wish to live there. She has expressed a desire to live with her mother, but she also expresses a desire to live with her paternal grandmother in Georgia."

{¶12} E.M. was never interviewed in camera by the court, but testimony was presented that he expressed a desire to return to appellant's custody. Ms. Zimmerman testified that E.M. has expressed to her many times that he wants to return home and live with appellant. Ms. Riser testified that E.M. has expressed he wants to return to appellant. The guardian ad litem's report indicated that E.M. stated he wants to stay

5

with the Zimmermans, but that the guardian is not certain E.M. understands what that means; the report indicates E.M. "misses her [appellant] terribly." The guardian also stated that E.M. has never affirmatively stated he wants to live with appellant, but has stated he "is bad" because he thinks he will not be able to go back to her.

{¶13} Appellant testified that she believes the children want to come back home to live with her. Appellant currently lives with her mother, Mrs. Brown; Mrs. Brown also testified that the children repeatedly state they miss appellant and want to come home.

{¶14} On April 17, 2015, the juvenile court granted NCDJFS' motions for permanent custody, and appellant was completely and permanently divested of all parental rights regarding N.P. and E.M. In its entry, the court stated "that Mrs. Brown's testimony is not credible, that Ms. Hickman's testimony is marginally credible and that [appellant's] testimony is completely unrealistic about her plans or ability to care for the children." It made no finding as to the credibility of Ms. Zimmerman.

{¶15} Appellant timely appealed both entries, and this court sua sponte consolidated both appeals for all purposes. She asserts the following assignment of error:

{¶16} "The trial court erred by failing to consider whether the children should have been appointed counsel to advocate for their wishes regarding permanent custody."

{¶17} At issue is whether N.P. and E.M., as minor children involved in a case where an agency was seeking to terminate their parent's parental rights, were entitled to independent counsel.

6

{¶18} "[P]ursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel *in certain circumstances*." *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, ¶29 (emphasis added). One circumstance in which it has been held that independent counsel is generally warranted is "when a child has 'repeatedly expressed a desire' to remain or be reunited with a parent but the child's guardian ad litem believes it is in the child's best interest that permanent custody of the child be granted to the state." *In re: Qu.W*, 11th Dist. Ashtabula No. 2015-A-0016, 2015-Ohio-2202, ¶61, quoting *In re Hilyard*, 4th Dist. Vinton Nos. 05CA600—05CA609, 2006-Ohio-1965, ¶36.

{¶19} This determination, however, is to be made "on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child." *Williams*, *supra*, ¶17. Therefore, our standard of review on appeal is whether the juvenile court properly applied the law to the facts of the case, giving deference to the juvenile court's factual findings.

{¶20} Here, the juvenile court heard testimony that the children repeatedly expressed a desire to return to appellant's custody. With regard to both children, however, the court found much of this testimony—specifically, that of appellant, Mrs. Brown, and Ms. Hickman—lacked credibility. We therefore do not agree with appellant's contention that the evidence in this case establishes the children's wishes were in conflict with the guardian ad litem's recommendations. While there was also testimony from Ms. Zimmerman that E.M. repeatedly stated a desire to live with

7

appellant, the court made no mention of Ms. Zimmerman's credibility in its judgment entry.

{¶21} The trial court may have determined the children did not require independent counsel because the credible evidence showed their expressed wishes were consistent with the guardian ad litem's recommendation. However, the trial court did not make any finding on the record that it considered the necessity of independent counsel for either child. This was necessary because there was, in fact, testimony that the children's wishes were contrary to the recommendation of the guardian ad litem. The trial court did not conduct an in camera interview of E.M. to determine whether he had sufficient maturity to benefit from court-appointed counsel or whether a dual appointment would have been appropriate. It noted simply that there was not a request for an in camera interview with E.M. Additionally, although the court conducted an in camera interview of N.P., nothing in the record reflects that the potential need for independent counsel or a dual appointment was considered; if it was, the record does not reflect the trial court's determination on that issue.

{¶22} Regarding the issue of maturity, there is "'no bright-line rule * * * regarding what age a child would be considered mature for purpose [of appointment] of legal counsel.'" *In re Williams*, 11th Dist. Geauga Nos. 2003-G-2498 & 2003-G-2499, 2003-Ohio-3550, ¶22. This court has previously held that a six-year-old and a five-year-old were arguably capable of expressing their interests in a permanent custody proceeding. *In re Allen*, 11th Dist. Trumbull No. 2008-T-0010, 2008-Ohio-3389, ¶13. In this matter, N.P. was eight years old at the time of the permanent custody hearing; E.M. was six years old. Therefore, because of the testimony that the children's wishes may have

8

been contrary to the recommendations of the guardian, the record should demonstrate what steps the trial court took in considering the need for independent counsel and what findings were made in that regard. With no indication on the record that this was even considered, we cannot determine whether the children's due process rights were protected. The trial court may have made a factual determination that there was no conflict or that the maturity level was such that independent counsel was not necessary, but that is not evident from this record. Many things may have occurred that are not a part of this record that influenced the trial court's decision. However, it is not appropriate for this court to make that initial determination de novo on appeal.

{¶23} We must remand this matter to the juvenile court for the limited purpose of determining whether to appoint independent counsel for N.P. or E.M., taking into account the maturity of each child and the possibility of a conflict between each child's wishes and the recommendation of the guardian ad litem. If the trial court decides that independent counsel or a dual appointment is necessary, it must hold a new hearing. If it decides that independent counsel for the children is not warranted, the reasons why should be set forth in the record. The court may then either affirm its prior decision or issue some other appropriate order.

{¶24} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Juvenile Division, is reversed and remanded for proceedings consistent with this opinion.


DIANE V. GRENDELL, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only with a Concurring Opinion.

9

_____

COLLEEN MARY O'TOOLE, J., concurs in judgment only with a Concurring Opinion.

{¶25} Because I believe that the appointment of independent counsel for the minor children was necessary in this permanent custody proceeding, I concur in judgment only.

{¶26} "'(I)t is well established that a parent's right to raise a child is an essential and basic civil right. *In re Hayes* (1997), 79 Ohio St.3d 46, 48, * * * (* * *). The permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case. *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, at ¶14, * * * (* * *). See, also, *In re Smith* (1991), 77 Ohio App.3d 1, 16, * * * (* * *). Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." (Citation omitted.) *Hayes* at 49.' *In re Phillips*, 11th Dist. Ashtabula No. 2005-A-0020, 2005-Ohio-3774, ¶22. (Parallel citations omitted.)" *In re Adoption of J.A.B.*, 11th Dist. Trumbull No. 2013-T-0114, 2014-Ohio-1375, ¶18.

{¶27} At issue is whether N.P. and E.M., as minor children involved in a case where an agency was seeking to terminate their parent's parental rights, were entitled to counsel. For the reasons stated, I find they were.

{¶28} "This court has held that children involved in such proceedings are 'parties' and are entitled to representation by counsel pursuant to Juv.R. 4(A), Juv.R. 2(Y), and R.C. 2151.352. *In re Williams,* 11th Dist. Nos. 2003-G-2498 & 2003-G-2499, 2003-Ohio-3550, at ¶19." *In re Allen*, 11th Dist. Trumbull No. 2008-T-0010, 2008-Ohio-

3389, ¶10. *See* Juv.R. 4(A) ("Every party shall have the right to be represented by counsel"); Juv.R. 2(Y) ("'Party' means a child who is the subject of a juvenile court proceeding"); R.C. 2151.352 ("A child * * * is entitled to representation by legal counsel at all stages of the proceedings").

{¶29} "In affirming this court's decision in *In re Williams,* the Supreme Court of Ohio held:

{¶30} "'Pursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances.' *In re Williams,* 101 Ohio St.3d 398, 2004-Ohio-1500 * * *, syllabus." *In re Allen, supra,* at ¶10-11.

{¶31} "The 'certain circumstances' in which it has been found necessary to appoint independent counsel are cases in which a motion for permanent custody has been filed[.]" *In re B.J.*, 11th Dist. Geauga No. 2010-G-2946, 2010-Ohio-4696, ¶35. Because the present case involves a permanent custody proceeding, the appointment of independent counsel for the minor children was necessary based on the facts presented.

{¶32} In addition to the foregoing, this writer notes that "[t]he 'certain circumstances' referred to [also] include instances where a conflict exists between the guardian's recommendation and the child's desires. *In re Williams*, 11th Dist. Geauga Nos. 2003-G-2498 and 2003-G-2499, 2003-Ohio-3550, ¶18." *In re Qu.W.*, 11th Dist. Ashtabula No. 2015-A-0016, 2015-Ohio-2202, ¶61. I note again that the appointment of independent counsel was necessary in this permanent custody proceeding. I further

note that the appointment of independent counsel is generally warranted in matters when a minor child desires to remain or be reunited with his or her parent but the GAL believes that permanent custody should be granted to the state. *Id.*, citing *In re Hilyard*, 4th Dist. Vinton Nos. 05CA600 - 05CA609, 2006-Ohio-1965, ¶36. *Accord Williams, supra,* at ¶7.

**{¶33}** Regarding the issue of maturity, the minor children in this case were six (E.M.) and eight (N.P.) years old. "This court has held that there is "'no bright-line rule (***) regarding what age a child would be considered mature for purposes (of appointment) of legal counsel."' *In re Williams,* 11th Dist. Nos. 2003-G-2498 & 2003-G-2499, 2003-Ohio-3550, at ¶22." *In re Allen, supra,* at ¶13. "Further, * * * the Tenth Appellate District has held that a five-year-old child 'was arguably capable of expressing his wishes.' *In re T.V.,* 10th Dist. Nos. 04AP-1159 & 04AP-1160, 2005-Ohio-4280, at ¶59." *Id.*

**{¶34}** The juvenile court appointed Attorney Klammer to only serve as the GAL for the minor children. It is clear the juvenile court never made a dual appointment of Attorney Klammer to serve as both GAL and counsel for the minor children.[1] In any event, however, a dual appointment would not have been proper in this case due to the conflict between the GAL's recommendations and the minor children's wishes. It is also clear that the minor children were not represented by independent counsel. As stated,

---

1. "While dual appointments are permitted in certain circumstances, the trial court must ensure that the appointed attorney's role as guardian ad litem does not conflict with her role as the children's attorney. *In re Williams,* 11th Dist. Nos. 2003-G-2498 & 2003-G-2499, 2003-Ohio-3550, at ¶20. (Citations omitted.) The Supreme Court of Ohio has explained the potential conflict that may arise from a dual appointment: '(T)he duty of a guardian ad litem to a ward (to recommend to the court what the guardian feels is in the best interest of the ward) and the duty of a lawyer to a client (to provide zealous representation) may be in fundamental conflict in a dual-representation situation.' *In re Williams,* 101 Ohio St.3d 398, 2004-Ohio-1500, at ¶18, * * *, citing *In re Baby Girl Baxter* (1985), 17 Ohio St.3d 229, 232, * * *." (Parallel citations omitted.) *In re Allen, supra,* at ¶14-15.

12

N.P. was interviewed, in camera, in the presence of the GAL. However, E.M. was never interviewed in chambers by the court.

{¶35} The evidence establishes the minor children's wishes were in conflict with the GAL's recommendations. The record reveals that N.P. and E.M. were troubled children with mental health issues. The record further reveals the minor children had close familial relations with each other, their younger sibling, Mother, and other relatives. The minor children repeatedly expressed their desires. Specifically, E.M. repeatedly expressed his desire to live with Mother. N.P. expressed reservations about returning to Mother's home, however, she also repeatedly stated a desire to live with either Mother or another relative. The testimony established that if permanent custody was granted to LCDJFS, the minor children would not live together and would likely not see their younger siblings, Mother, and other relatives. Nevertheless, the GAL believed it was in the minor children's best interest to sever the familial ties and grant permanent custody to the state.

{¶36} Most importantly, the record further reveals the juvenile court failed to consider whether or not the minor children should have been appointed independent, separate counsel to advocate for their wishes regarding permanent custody. Even counsel for LCDJFS conceded at oral argument that the court should have assessed whether an attorney should have been appointed in this case. Based on the facts presented, the minor children are entitled to zealous representation of their interests. *See In re Allen, supra,* at ¶18. As this is a permanent custody proceeding and a conflict existed between the minor children's wishes and the GAL's recommendations, the GAL

should have moved the juvenile court to appoint separate counsel for the minor children, or alternatively, the court should have done so sua sponte.

{¶37} This matter necessitates a reversal as the minor children were never appointed an attorney even though the Juvenile Rules expressly state that an appointment was necessary in this case. Because the minor children went without legal representation, they did not receive due process in this juvenile, permanent custody proceeding. *See, e.g., In re Gault*, 387 U.S. 1 (1967). I believe that the juvenile court, on remand, should determine whether the minor children may share legal representation if their wishes are similar to one another, or separate counsel if their wishes are different.

{¶38} I agree that Mother's sole assignment of error is well-taken. I also agree to reverse and remand the judgment of the Lake County Court of Common Pleas, Juvenile Division. Specifically, the juvenile court should conduct a new hearing on LCDJFS' motions for permanent custody after both of the minor children's wishes have been established and the court has ensured their right to counsel is safeguarded.

{¶39} The majority believes this case should be remanded for the trial court to determine and clarify whether the minor children should be appointed independent counsel. Because this writer determines that the appointment of independent counsel is necessary in this case, I concur in judgment only.