[Cite as *In re N.P*, 2016-Ohio-3125.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF N.P. AND E.M., DEPENDENT CHILDREN. | : | **O P I N I O N** |
| | : | |
| | : | **CASE NOS. 2016-L-002** |
| | : | **2016-L-003** |

Civil Appeals from the Lake County Court of Common Pleas, Juvenile Division.
Case Nos. 2013 DP 00145 and 2013 NG 02047.

Judgment: Affirmed.

*Christopher J. Boeman*, P.O. Box 583, Willoughby, OH 44096 (For Appellant Veronica Pease).

*Charles E. Coulson*, Lake County Prosecutor, and *Karen A. Sheppert*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Appellee Lake County Department of Job and Family Services).

*Darya Jeffreys Klammer*, The Klammer Law Office, Ltd., 7482 Center Street, Unit 6, Mentor, OH 44060 (Guardian ad litem).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Veronica Pease, appeals from the December 4, 2015 judgment of the Lake County Court of Common Pleas, Juvenile Division. The trial court declined to appoint independent counsel for the minor children (N.P., d.o.b. 2/18/07, and E.M., d.o.b. 10/29/08) following our remand order and affirmed its prior decision granting permanent custody to appellee, Lake County Department of Job and Family Services

("LCDJFS"). The complete factual and procedural history of this matter is recited in *In re N.P. & E.M.*, 11th Dist. Lake Nos. 2015-L-061 & 2015-L-062, 2015-Ohio-4542. For the following reasons, we affirm the trial court's decision.

{¶2} On January 6, 2015, LCDJFS filed motions for permanent custody of the minor children. On February 26, 2015, appellant filed a motion to return custody to her. These motions were set for a hearing. Prior to the hearing, the guardian ad litem filed her reports on April 8, 2015, recommending the court grant permanent custody of the children to LCDJFS.

{¶3} The hearing was held before the juvenile court judge on April 15, 2015. Appellant was represented by counsel. Timothy and Stacy Zimmerman, the children's maternal aunt and uncle who had been joined as parties, appeared pro se. The children's guardian ad litem was present, but she did not testify. The parties stipulated to the admission of the guardian ad litem's reports. In addition to appellant, the following witnesses testified before the court: Jennifer Dzugan, E.M.'s counselor at Crossroads Mental Health Service; Shannon Easter Kelley, N.P.'s counselor at Signature Health; Laurie Truhan, appellant's counselor at Signature Health; Heather Riser, a former social worker and supervisor at LCDJFS; Jessica Ray, a social worker at LCDJFS; Stacy Zimmerman, with whom E.M. was residing; Ann Brown, the children's maternal grandmother and with whom appellant was residing; and Selena Hickman, the children's maternal great aunt.

{¶4} Ms. Riser testified that N.P. has "gone back and forth for a very long time" about her wishes regarding living with appellant; that N.P. likes visiting with appellant, but that she wanted to live with Ms. Hickman; and that N.P. did not feel safe at Mrs.

2

Brown's, where appellant was living. Ms. Ray testified that N.P. feels safe with her paternal grandmother in Georgia and with her foster mother, but neither are options for permanent placement. The guardian ad litem's report states that N.P. "has reported concerns about returning to the home of [Mrs. Brown], where [appellant] resides"; that N.P. clearly loves appellant; and that N.P. knows she is safe with her foster family and is not safe with appellant given the circumstances. Ms. Hickman testified, on the other hand, that N.P. repeatedly expressed she wants to go home to live with appellant.

{¶5} N.P. was interviewed by the court in camera in the presence of her guardian ad litem. The court found that N.P. "loves her mother, however, she knows it is unsafe to return to her maternal grandmother's home (where her mother lives) and she does not wish to live there. She has expressed a desire to live with her mother, but she also expresses a desire to live with her paternal grandmother in Georgia."

{¶6} E.M. was not interviewed in camera by the court, and a request for an interview with E.M. was never made. Ms. Zimmerman testified that E.M. has, at times, expressed to her that he wants to return home and live with appellant. Ms. Riser also testified that E.M. has, at times, expressed he wants to return to appellant. The guardian ad litem's report indicated that E.M. stated he wants to stay with the Zimmermans, but the guardian is not certain E.M. understands what that means; the report indicates E.M. "misses [appellant] terribly." The guardian also stated that E.M. has never affirmatively stated he wants to live with appellant, but has stated he "is bad" because he thinks he will not be able to go back to her.

**{¶7}** Appellant testified that she believes the children want to come back home to live with her. Appellant currently lives with her mother, Mrs. Brown; Mrs. Brown also testified that the children repeatedly state they miss appellant and want to come home.

**{¶8}** On April 17, 2015, the juvenile court granted LCDJFS' motions for permanent custody, and appellant was completely and permanently divested of all parental rights regarding N.P. and E.M. In its entry, the court stated "that Mrs. Brown's testimony is not credible, that Ms. Hickman's testimony is marginally credible and that [appellant's] testimony is completely unrealistic about her plans or ability to care for the children." It made no findings at that time as to the credibility of Ms. Zimmerman or that it had considered the necessity of independent counsel for either child.

**{¶9}** Appellant appealed the trial court's order. The sole issue on appeal was whether N.P. and E.M., as minor children involved in a case where an agency was seeking to terminate their parent's parental rights, were entitled to independent counsel. We held the trial court erred by not stating it had considered the necessity of independent counsel for either child. *N.P.*, *supra*, at ¶21. "This was necessary because there was, in fact, testimony that the children's wishes were contrary to the recommendation of the guardian ad litem." *Id.*

> With no indication on the record that this was even considered, we cannot determine whether the children's due process rights were protected. The trial court may have made a factual determination that there was no conflict or that the maturity level was such that independent counsel was not necessary, but that is not evident from this record. Many things may have occurred that are not a part of this record that influenced the trial court's decision. However, it is not appropriate for this court to make that initial determination de novo on appeal.

*Id.* at ¶22. We remanded the matter to the juvenile court for the limited purpose of determining whether to appoint independent counsel for either child, "taking into account the maturity of each child and the possibility of a conflict between each child's wishes and the recommendation of the guardian ad litem. * * * If it decides that independent counsel for the children is not warranted, the reasons why should be set forth in the record." *Id.* at ¶23.

{¶10} On remand, the trial court found that "the children's wishes were not in conflict with the recommendation of the Guardian ad Litem, therefore the appointment of separate counsel was not warranted and hereby affirms its April 17, 2015 decision."

{¶11} Appellant again appealed and asserts one assignment of error for our review:

{¶12} "The trial court erred by determining that the appointment of separate counsel for N.P. and E.M. to advocate for their wishes regarding permanent custody was not warranted."

{¶13} "[P]ursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel *in certain circumstances*." *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, ¶29 (emphasis added). One circumstance in which it has been held that independent counsel is generally warranted is "when a child has '*repeatedly* expressed a desire' to remain or be reunited with a parent but the child's guardian ad litem believes it is in the child's best interest that permanent custody of the child be granted to the state." *In re Qu.W*, 11th

5

Dist. Ashtabula No. 2015-A-0016, 2015-Ohio-2202, ¶61 (emphasis sic), quoting *In re Hilyard*, 4th Dist. Vinton Nos. 05CA600—05CA609, 2006-Ohio-1965, ¶36.

**{¶14}** This determination, however, is to be made "on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child." *Williams*, 2004-Ohio-1500, ¶17. Regarding the issue of maturity, there is "no bright-line rule * * * regarding what age a child would be considered mature for the purposes of the appointment of legal counsel." *In re Williams*, 11th Dist. Geauga Nos. 2002-G-2454 & 2004-G-2459, 2002-Ohio-6588, ¶25. Further, "there is no need to consider the appointment of counsel based upon a child's occasional expression of a wish to be with a parent or because of a statement made by an immature child." *Id.* at ¶24.

**{¶15}** Our standard of review on appeal, therefore, is whether the juvenile court properly applied the law to the facts of the case, giving deference to the juvenile court's factual findings. *N.P.*, *supra*, at ¶19.

**{¶16}** On remand, the trial court considered whether independent counsel was needed for the children and set forth its reasons in the entry why the appointment of independent counsel was not warranted. It found "the children's wishes were not in conflict with the recommendations of the guardian ad litem," and "E.M. was not mature enough to understand the gravity of the permanent custody situation * * * and therefore, does not have the skills to adequately or completely communicate or understand his thoughts and/or feelings." The court further found that "if any such conflict existed, the

6

Court believes that [the guardian ad litem] would have notified the Court pursuant to Superintendence Rule 48."

{¶17} Regarding N.P., there was testimony that she expressed a desire to live with appellant. That testimony, however, was found to be not credible or marginally credible by the trial court. During her in camera interview, N.P. expressed she does not feel safe at her maternal grandmother's house, which is where appellant resides, and that returning to appellant would be dangerous for her. We therefore agree with the trial court that N.P.'s wishes and the guardian ad litem's recommendation are not in conflict.

{¶18} Regarding E.M., his aunt, with whom he was living, testified that he had at times expressed to her a desire to live with appellant. In its December 4, 2015 judgment entry, the trial court stated it found this testimony to be credible, but noted that due to his mental health issues and lack of maturity, E.M. was unable to understand permanent custody. E.M. had expressed to his guardian ad litem that he wanted to remain with his aunt and uncle, but the guardian ad litem was not certain he understood what that meant. E.M. did not ever express to the guardian ad litem that he wished to return to appellant. The guardian ad litem also indicated to the trial court that E.M. "would just play along" if the court were to interview him due to his lack of communication skills. Jennifer Dzugan, E.M.'s counselor at Crossroads Mental Health Service, testified that E.M. had difficulty expressing and discussing his feelings: "Any time he felt uncomfortable or the feelings were tough for him, he would become extremely disregulated. * * * He became highly anxious and would be in a frenzied state, running, throwing things at people, pushing people away, things like that."

{¶19} The trial court found that E.M. is unable to understand his own thoughts and feelings regarding permanent custody due to his mental health issues and lack of maturity. The trial court also stated that the "seasoned" guardian ad litem would have notified the court if she found a conflict existed between E.M.'s best interest and E.M.'s wishes. Because she did not do so, the trial court was confident that the guardian ad litem's recommendations were consistent with both.

{¶20} Some cases have held that a trial court should, at a minimum, hold an in camera interview of the minor child before determining whether a conflict exists for purposes of appointing independent counsel. *See, e.g., In re Roque*, 11th Dist. Trumbull No. 2005-T-0138, 2006-Ohio-7007. Here, however, there is no compelling evidence that E.M. unequivocally expressed a desire to live with appellant and understood the consequence of doing so. Further, it is apparent that E.M.'s mental health issues and lack of communication skills would have rendered an in camera interview fairly superfluous. Due to E.M.'s immaturity and upon the facts of this case, any possible error in "failing to further probe the child's wishes" would have been harmless error. *In re J.B.*, 9th Dist. Summit No. 23436, 2007-Ohio-620, ¶24, citing *In re Shrider*, 3d Dist. Wyandot No. 16-05-21, 2006-Ohio-2792, ¶25.

{¶21} Also, it must be noted that appellant, the children's mother, was present at all stages of the proceedings. At no time during the hearings did she request the trial court appoint separate counsel for the children nor did she request the trial court conduct an in camera interview with E.M. Even on remand, appellant did not request an in camera interview with E.M.

**{¶22}** Ultimately, we must be mindful that "the *fundamental* or *primary* inquiry at the dispositional phase of these juvenile proceedings" is the "best interests and welfare of [the] child." *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979) (emphasis sic). At no point on appeal has appellant challenged the trial court's judgment as being against the best interests or welfare of her children, and it is apparent from a review of the record that such a challenge would have been unsuccessful. We do not perceive any benefit either child would have received with regard to this issue had independent counsel been appointed.

**{¶23}** Under the specific facts and circumstances of this case, we cannot say the trial court committed error when it declined to appoint an independent attorney to represent either child for purposes of the permanent custody proceedings.

**{¶24}** Appellant's assignment of error is without merit.

**{¶25}** The judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.

DIANE V. GRENDELL, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with Dissenting Opinion.

**{¶26}** I would reverse and remand, with orders that the trial court appoint counsel for the minor children, conduct an in camera interview with E.M., and hold a new hearing on the motions for permanent custody. This matter was reversed and

9

remanded originally because we could not tell from the record what steps the trial court took regarding appointment of counsel for the children, and what its reasoning was in *not* appointing them counsel. On remand, the trial court did not take any new evidence: it simply entered a judgment based on what it did before. The remand did not accomplish its purpose. The best interest of the child is the paramount concern in permanent custody proceedings. The trial court has not taken the steps necessary to discover what these two children believe is in their own best interest nor could it discern, without an interview, if they were mature enough to require separate counsel or understand the gravity of the permanent custody situation.

{¶27} As the majority notes, the Supreme Court of Ohio has held that children subject to juvenile proceedings are parties to the case, and are entitled to "independent counsel in certain circumstances." *Williams*, *supra,* at ¶29. This court has held that, "[t]he 'certain circumstances' in which it has been found necessary to appoint independent counsel are cases *in which a motion for permanent custody has been filed* or in which there have been allegations of abuse." *In re B.J.*, 11th Dist. Geauga No. 2010-G-2946, 2010-Ohio-4696, ¶35. (Emphasis added.) These are permanent custody proceedings. Under our own prior authority, the trial court had an absolute duty to appoint counsel for these children.

{¶28} Further, it is universally recognized that when there is a conflict between the expressed wishes of a child in permanent custody proceedings, and the recommendation of the guardian ad litem, appointment of counsel for the child is warranted.

10

**{¶29}** The trial court justified its failure to appoint counsel for E.M. because he was not "mature enough to understand the gravity of the permanent custody situation," and "is not mature enough to express his desires or wishes." This court has held: "When a child lacks the maturity to express his or her wishes and nothing otherwise indicates that the child's wishes conflict with the guardian ad litem, a juvenile court is not required to appoint counsel for the child. *In re L.W.*, 9th Dist. Summit Nos. 26861 and 26871, 2013-Ohio-5556, ¶20." *In re Qu. W.*, 11th Dist. Ashtabula No. 2015-A-0016, 2015-Ohio-2202, ¶61. In this case, various witnesses testified E.M. loves his mother, and wishes to be with her. These witnesses include two social workers involved in the case. The report of the guardian ad litem indicates he still loves his mother. Thus, at the very least other circumstances indicate his wishes conflict with the opinion of the guardian ad litem, entitling him to counsel. *Id.*

**{¶30}** I note the trial court did not interview E.M. in camera, even on remand. In *In re Williams*, 11th Dist. Geauga Case Nos. 2003-G-2498 and 2003-G-2499, at ¶18, this court held:

**{¶31}** "When, as in this case, the court is informed of the child's expressed desire to remain with his natural parent, the decision to appoint counsel should be made on a case by case basis based on the child's maturity. *At a minimum, the court should conduct an in-camera, recorded interview with the child before making a lack of maturity to benefit from having appointed counsel decision.*" (Emphasis added.)

**{¶32}** By not conducting an in camera interview with E.M., the trial court ignored our binding precedent.

{¶33} I believe the trial court has an independent obligation to conduct such an interview in permanent custody proceedings, when there are indications the child and the guardian ad litem do not agree. The failure to conduct such an interview with E.M. in this case further illustrates the necessity of appointing counsel for children in permanent custody proceedings – so there *is* someone present to advocate for the child, as by requesting an in camera interview.

{¶34} The trial court found that N.P. felt unsafe at the home of her maternal grandmother, with whom mother lives. The guardian ad litem found the same. Nevertheless, both the guardian ad litem, and the trial court, agreed that N.P. misses her mother, and loves her. One of the social workers testifying stated that N.P. expressed periodically a desire to live again with her mother, or with her maternal aunt. These are sufficient indicia that N.P.'s wishes conflicted sufficiently with the recommendation of the guardian ad litem so as to require appointment of counsel for her.

{¶35} As I stated in my concurring opinion on the initial appeal, "[b]ecause the minor children went [through these proceedings] without legal representation, they did not receive due process in this juvenile, permanent custody proceeding. *See, e.g.*, *In re Gault*, 387 U.S. 1, * * * (1967)." *In re N.P. & E.M.*, *supra*, at ¶37. They still have not.

{¶36} I respectfully dissent.